**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Neighbors of the Mogollon Rim Incorporated,<br><br>Plaintiff,<br><br>v.<br><br>United States Forest Service, et al.,<br><br>Defendants. | No. CV-20-00328-PHX-DLR<br><br>**ORDER** |

Plaintiff Neighbors of the Mogollon Rim, Incorporated is a non-profit organization comprised of property owners and residents of Colcord Estates, Ponderosa Springs, and Ponderosa Springs Estates ("the Communities"), located on private enclaves in the Tonto National Forest. Defendants are the United States Forest Service ("Forest Service") and the United States Fish and Wildlife Service ("USFWS"). Plaintiff challenges the Forest Service's new livestock grazing management plan for the Tonto National Forest Bar X allotments ("Bar X") and Heber-Reno Sheep Driveway ("Driveway"). At issue is Plaintiff's motion for a preliminary injunction (Doc. 45), which is fully briefed (Docs. 48, 51, 52). For the following reasons, Plaintiff's motion is denied.[1]

**I. Background**

The Bar X is located in the northeastern part of the Tonto National Forest and

---

[1] Oral argument is denied because the issues are adequately briefed and oral argument will not help the Court resolve the motion. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f). Neither party requested an evidentiary hearing.

consists of four separate grazing allotments: The Bar X, Haigler Creek, Young, and Colcord Canyon. The Driveway is a roughly two-mile wide string of eight pastures bisecting the Bar X. Historically, four Driveway pastures have been associated with the Bar X. The northernmost portions of the Bar X are the Colcord Canyon Allotment and the Turkey Peak Pasture (collectively "Colcord/Turkey Pasture"). The Communities, comprising over 300 homes, are located in the Colcord/Turkey Pasture.

Cattle grazing has occurred on the Bar X for over a century. Studies conducted by the Forest Service in the 1970s revealed that a history of severe overgrazing and poor management had significant, adverse environmental effects on the Bar X. Accordingly, in 1979 the Forest Service reduced grazing levels on the Bar X and deauthorized grazing on the Colcord/Turkey Pasture. After conducting further studies, the Forest Service increased grazing levels on the Bar X in 1985 but did not reauthorize grazing on the Concord/Turkey Pasture. The Forest Service noted, however, that it could reopen the Colcord/Turkey Pasture in the future based on assessments of current conditions.

Around 2006, the Bar X, LLC purchased the Bar X Ranch and, in 2007, was issued a grazing permit by the Forest Service. In 2015, the Forest Service authorized the Bar X Ranch to graze the Colcord/Turkey Pasture for one year, marking the first time since 1979 that the area had been subject to grazing. The unexpected presence of cattle near the Communities caused residents a great deal of concern, annoyance, and fear. The Forest Service again authorized grazing on the Colcord/Turkey Pasture in 2018, but later retracted that authorization in response to litigation brought by Plaintiff.

The Forest Service then initiated a National Environmental Policy Act ("NEPA") analysis to determine whether and how to modify grazing management on the Bar X. In particular, the Forest Service analyzed the likely effects of permitting grazing across the Bar X, including the Colcord/Turkey Pasture, as well as all four associated Driveway pastures. The new scheme also would increase the maximum permitted amount of grazing on the Bar X and associated Driveway pastures, while formalizing a system of adaptive management, under which actual grazing levels and permitted areas could be flexibly

modified based on changing conditions. In December 2019, the Forest Service issued a final Environmental Assessment and a Decision Notice/Finding of No Significant Impact, finding that the new grazing scheme will not have a significant effect on the environment. The Forest Service then issued a new term grazing permit and a new allotment management plan for the Bar X, permitting grazing on the Colcord/Turkey Pasture.

This lawsuit followed. Plaintiff challenges the Forest Service's new grazing scheme under the Administrative Procedures Act ("APA"), contending that it violates NEPA, the Endangered Species Act, and the National Forest Management Act. After receipt of the administrative record, the parties' submitted cross-motions for summary judgment, which are fully briefed and currently under review. Pursuant to the new grazing scheme, the Forest Service has authorized grazing on the Colcord/Turkey Pasture this summer, beginning on July 1, 2021. Plaintiff has moved to preliminarily enjoin grazing on the Colcord/Turkey Pasture pending the Court's decision on the cross-motions for summary judgment.

**II. Legal Standard**

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Am. Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009). These elements may be balanced on a sliding scale, whereby a stronger showing of one element may offset a weaker showing of another. *See Alliance for the Wild Rockies v. Cottrell*, 632 F. 3d 1127, 1131, 1134-35 (9th Cir. 2011). But the sliding-scale approach does not relieve the movant of the burden to satisfy all four prongs for the issuance of a preliminary injunction. *Id.* at 1135. Instead, "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135. The movant bears the burden

of proof on each element of the test. *Envtl. Council of Sacramento v. Slater*, 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000).

**III. Discussion**

The parties have rested on their cross-motions for summary judgment for purposes of the likelihood of success on the merits prong. The Court currently has those motions under review. For purposes of this order, however, the Court need not pass preliminary judgment on the merits of Plaintiff's claims because the other preliminary injunction factors do not favor relief.

First, Plaintiff has not made a strong showing of irreparable harm if the Colcord/Turkey Pasture is grazed this summer. Notably, the Colcord/Turkey Pasture was grazed in 2015 and, although it caused the residents of the Communities a great deal of concern, annoyance, and fear, Plaintiff has not shown that the 2015 grazing irreparably harmed the environment or recreational opportunities. It is unclear why, six years later, one more summer of grazing will irreparably damage the environment or local recreational opportunities when the grazing that occurred in 2015 does not appear to have had such an enduring effect. Moreover, although the residents of the Communities experienced fear, anxiety, and annoyance during the 2015 grazing season, it appears that these experiences were at least in part attributable to the fact that the residents were caught off guard by the unexpected presence of cattle. The residents will not be caught off guard this time, however, as the Forest Service's decision to authorize grazing on the Colcord/Turkey Pasture was made known well in advance, giving them time to prepare.

Plaintiff's most compelling argument for why summer grazing of the Colcord/Turkey Pasture will cause irreparable harm relates to fencing. Most of the homes in the Communities are (or were) unfenced. If residents want to ensure that grazing cattle do not enter and/or damage their properties, they will need to erect fences, which costs money. And although economic harm typically is not considered irreparable, this general rule does not apply here because of the unavailability of monetary damages in APA cases. *See City and Cty. of San Francisco v. USCIS*, 981 F.3d 742, 762 (9th Cir. 2020). Once the

residents pay for fencing, they will be out that money for good. The Court finds, however, that the cost of erecting fencing does not justify preliminary injunctive relief for two reasons.

First, although (with the exception of 2015) grazing has not been authorized on the Colcord/Turkey Pasture since 1979, the Colcord/Turkey Pasture remains part of an active grazing allotment in the Tonto National Forest. The Communities' residents cannot reasonably expect that the Colcord/Turkey Pasture will remain off limits to grazing into perpetuity. Indeed, the Forest Service initially deauthorized grazing on the Colcord/Turkey Pasture in order to allow time for the area to recover from a period of mismanagement and overgrazing, but it emphasized that it could reopen the area to grazing in the future based on assessments of current conditions. And Arizona is an open-range state, meaning that state law places the burden of preventing unwanted livestock intrusions on private property owners. *See* A.R.S. § 3-1427; *Carrow Co. v. Lusby*, 804 P.2d 747, 751 (Ariz. 1990). To be clear, state law does not require private property owners to erect fences. But those who choose not to cannot then complain about damage caused by livestock intrusions that could have been avoided or mitigated by fencing. The combined effect of the Colcord/Turkey Pasture being part of an active grazing allotment and Arizona being an open-range state is that residents in the Communities cannot reasonably expect that they will never have to incur the expense of fencing their properties. They might not want to erect fencing now, but the possible need for fencing is a prospect that property owners in the Colcord/Turkey Pasture must live with, and this reality renders the expense of erecting fences less compelling.

Second, and more importantly, the economic harm to the residents must be balanced against the other equities. Here, the Bar X Ranch has explained that, due to devastating drought conditions, 2018 and 2020 produced very little vegetative growth in the pastures that it previously has grazed. Consequently, the Colcord/Turkey Pasture is the only un-grazed pasture the Bar X Ranch can use this year. To mitigate the effects of drought, the Bar X Ranch has sold off all its calves at a financial loss, but if it is unable to graze its

remaining herd on the Colcord/Turkey Pasture this summer, it contends that it probably will need to destock its entire herd.

Plaintiff argues that the Bar X Ranch is exaggerating the likelihood of destocking. Plaintiff suggests that Bar X Ranch could further reduce its herd size to mitigate the effects of drought. But this solution does not account for the effects of further grazing on previously grazed pastures, even by a smaller herd. Forest Service Supervisory Rangeland Management Specialist Jeffrey Sturla explained in his declaration that, due to drought conditions, previously grazed rangelands have not had a chance to recover since livestock last left those pastures. Thus, if the Bar X Ranch were to graze these other pastures—as Plaintiff seems to suggest—such grazing will only further stress those areas. Thus, the consequence of granting a preliminary injunction likely will be either (1) forcing the Bar X Ranch to destock its entire herd or (2) forcing the Bar X Ranch to further reduce its herd size (possibly at another financial loss, similar to the sale of the calves) and to add stress to the other Bar X pastures by grazing previously grazed areas that have not yet recovered because of drought conditions. Because a preliminary injunction is an equitable remedy, the Court must balance the competing harms. As between the harm to the Communities' residents and the harms to the Bar X Ranch and the previously grazed and unrecovered pastures, the Court finds the latter more compelling. Accordingly,

**IT IS ORDERED** that Plaintiff's motion for a preliminary injunction (Doc. 45) is **DENIED**.

Dated this 30th day of June, 2021.

Douglas L. Rayes
United States District Judge